788 So.2d 988 (1998)
DEPARTMENT OF CHILDREN & FAMILIES and The Guardian Ad Litem Program, Appellants,
v.
C.F., Appellee.
No. 98-1775.
District Court of Appeal of Florida, Third District.
October 28, 1998.
Rehearing Denied December 9, 1998.
Nancy Schleifer, Miami, and Robin H. Greene, for appellants.
John R. Greenwood, for appellee.
Before NESBITT, FLETCHER, and SHEVIN, JJ.
NESBITT, J.
The Department of Children & Families, through the Guardian Ad Litem Program, appeals the trial court's denial of the Department's petition to terminate the parental rights of C.F. ("the mother") as to her childrenV.C., age fifteen, J.F., age thirteen, S.F., age twelve, A.F., age ten, and C.F., age eight. We agree with the Department that denial of the petition was not supported by the evidence and was not in the children's best interest, and hereby reverse.
In our view, taking into account the factors set forth in section 39.4612, Florida Statutes (1995), relating to the manifest best interests of the children, the Department more than met its "clear and convincing" burden[FN1] that termination of the mother's parental rights was warranted. In this instance, the evidence was overwhelmingly in favor of termination, and the trial court's contrary decision was an abuse of discretion.
FN1. See § 39.467(1), Fla. Stat. (1995); Doe v. Department of Health & Rehabilitative Services, 563 So.2d 655, 661 (Fla. 1st DCA 1990).
Section 39.464, Florida Statutes (1995), provides the grounds for termination of parental rights. These include voluntary relinquishment; abandonment; continuing abuse or neglect; egregious abuse; and the parent's failure to substantially comply with the Department's case plan which evidences continuing abuse or neglect. Here, the Department proved, by clear *989 and convincing evidence, both continuing abuse or neglect and failure to comply with the case plan.
These five children were initially taken into state custody in 1990, after baby C.F., then an infant, was taken to a doctor who discovered that the child had suffered multiple skull fractures, a collarbone fracture, and rib fractures. The doctor concluded that C.F. had suffered multiple episodes of inflicted trauma, disputing the mother's story that the baby had fallen from her stroller. Another child, J.F., then four, had visible welts and bruises on his body. The mother later admitted that these were caused by her striking the boy with a belt. Also, shortly after being taken into state custody, the two older girls, V.C., then seven, and S.F., then five, said that they had been sexually abused by their uncle, the mother's brother. During this period, the mother, who was in her twenties, was involved in a sexual relationship with a minor male, the father of baby C.F., who was living in the house with the mother and the children.
In 1992, after the mother had completed several programs with the Department, the children were returned to live with her. However, they were removed again in 1995 after V.C., then thirteen, and S.F., then eleven, again reported sexual abuse by their uncle. V.C. also reported sexual abuse by her mother's live-in boyfriend, another minor. One incident V.C. related involved being fondled by the boyfriend while he was engaged in sexual intercourse with her mother. The children also related to a counselor that their mother had beaten them since their 1992 return to her.
Throughout her counseling and even during her testimony at the termination hearing, the mother consistently refused to accept any responsibility for the sexual abuse her daughters suffered and, in fact, blamed the children for the Department's initiation of termination proceedings against her. The testimony of several counselors showed that the mother continues to subject the children to an unhealthy, dangerous atmosphere at home with psychological abuse from the mother as well as continuing sexual abuse. The mother allowed the children to be in her brother's presence, despite his earlier sexual attacks on them. There was ample though not unrefutedtestimony from counselors that the mother was not progressing in her parental development. She had missed meetings, dropped out of, or been asked to leave various therapy programs. Further, during the termination proceedings, despite an order to have no contact whatsoever with the children, the mother continued to contact them.
The trial judge's finding that the mother had made "meaningful progress" on her case plan prior to the Department's initiation of termination proceedings is simply not supported by the evidence here. In fact, the evidence showed that reunification was not in the best interests of the children. Despite the children's obvious bond with their mother, she continues to neglect the children's welfare and deny responsibility for the situation the children have been forced to endure in their own home. This Court finds the mother's sexual relationship with two different minors very disturbing, especially as it was occurring in a live-in arrangement in the same household as the children. This sexual activity with teenage boys was more than inappropriate; it constituted a felony. Certainly, the children should not have been exposed to it.
The mother has had eight years to "get her act together" with regards to proper care for her children, and has failed. These were eight years out of the lives of these young children. Several of them *990 have documented emotional problems, likely as a result of their mother's neglect and the abuse to which she subjected them. The oldest girl, V.C., in particular, has experienced significant emotional and behavioral problems. At this point in their lives, the children need permanency and a safe home environment, and the evidence the Department produced below showed that this cannot be achieved with their mother.
We hereby reverse the order denying the Department's petition for termination of parental rights. On remand, we direct that judgment be rendered terminating C.F.'s parental rights.
Reversed and remanded.