LEWIS, J.
 

 These appeals involve a trial court’s decision regarding a petition for the termination of the parental rights of J.S. (“the mother”) and B.A. (“the father”) to L.A. (“the child”).
 
 [1]
 
 The trial court terminated the rights of the mother, declined to terminate the rights of the father, and placed the child in permanent guardianship. The mother appeals from the order terminating her parental rights, and the Guardian ad Litem Program (“GAL”) and the Department of Children and Families (“the Department”) appeal from the order declining to terminate the father’s parental rights. For the reasons explained below, we reverse both orders and remand for further proceedings consistent with this opinion.
 

 Facts and Procedural History
 

 The child was sheltered in September of 2004 and subsequently adjudicated dependent as to both parents, based on their consent.
 
 [2]
 
 The factual basis for the dependency petition included allegations that
 
 *1172
 
 the parents’ home was hazardous and unsanitary, that the child had been brought to school “filthy,” and that the child had been exposed to domestic violence. In May of 2005, the trial court accepted a case plan for the parents. The case plan assigned each parent tasks that were designed to prevent the risk that the child would be exposed to domestic violence and to remedy the conditions of the home. In November of 2006, the Department filed a Petition for Involuntary Termination of Parental Rights as to both parents, alleging that grounds for termination of parental rights existed under paragraphs (b), (c), and (e) of section 39.806(1), Florida Statutes (2006). After a considerable delay, the matter proceeded to trial, where the Department sought to prove grounds for termination of both parents’ rights under paragraphs (c) and (e) only.
 

 The evidence at trial indicated that both parents had participated in the tasks required under the case plan. The Department’s representative testified, however, that she did not believe either parent had satisfied the case plan’s requirement to maintain a clean and sanitary home. She also opined that the conditions of the home had not improved after the parents completed their case plan tasks. The “Family Intervention Associate” who trained the father on housekeeping matters for three hours per week over the course of three months testified that she did not consider the training to have been successful. She further testified that the condition of the home was beyond “dirty and cluttered” and that she believed it posed a hazard to the child.
 

 It was undisputed that the parents were still living together in the father’s home. The Department presented photographs depicting the conditions of the home at various points during the pendency of the case. This evidence showed that the condition of the home had improved during certain periods, but that the outside of the home and the carport always contained piles of trash and miscellaneous items, which various witnesses testified were hazardous to the child. Witnesses testified that the house was so roach-infested that once, when the father brought a snack to the child at the visitation center, roaches crawled out of the snack bag. One witness had also seen “roach carcasses like a quarter inch thick in the cabinet.” Witnesses also testified that the house had a strong foul odor and that the inside was often extremely cluttered and trash-filled. The odor of the house was described by various witnesses as that of ammonia, feces, and rot. One witness testified that she had seen cat feces on the floor of the home, and another testified that she had observed an old dirty diaper in the home, even though no children or infants were living there.
 

 There was evidence that the mother suffered from schizophrenia. A psychologist testified that “hoarding” was a symptom of schizophrenia and that this symptom is very difficult to control. This psychologist, who had evaluated both parents, further testified that it was unlikely that the conditions in the home would improve in the long-term because of the “relationship dynamic” between the parents.
 

 The psychologist testified that the mother failed to understand the proper roles in a parent-child relationship and that role reversal in a parent-child relationship can have severe detrimental effects on a child. Based on the psychologist’s testing, the mother scored in the high-risk range regarding her “tendency to view children as being in the position of taking care of you rather than the other way around.” The psychologist’s testing of the father revealed that he had a medium or average risk of failing to understand his role in the
 
 *1173
 
 parent-child relationship. Regarding the child’s relationship with both parents, however, the psychologist testified that the child was “very much aware of the fact that her parents are in a position where they’re needy rather than being people who can provide her a place of protection and safety.” Although the psychologist observed a warm and caring relationship between the father and child, she opined that the child did not view the father as a caregiver and that the father was likely not capable of parenting and caring for the child. Regarding any harm that might be caused by a termination of both parents’ rights, the psychologist testified that “the difficulty will be for [the child] not so much missing the longing of being able to have that connection with them where they are her parents and providers, but not being able to be in the position of making sure they are okay.” She recommended that the child have at least one final visit alone with the father.
 

 The trial court heard additional evidence from various witnesses regarding the interaction between the parents and the child during supervised visits. Most of the witnesses reported a lack of communication and a failure to demonstrate the proper parental roles on the part of both parents. Most of the witnesses also testified that there was more affection between the father and the child than between the mother and the child. Additionally, there was some evidence of aggressive behavior by the child towards the mother.
 

 The psychologist, the guardian ad litem, and the Department’s representative all recommended terminating the rights of both parents. Ultimately, the trial court decided to terminate the rights of the mother, but not the father. In lieu of terminating the father’s rights, the trial court decided to place the child in permanent guardianship. It issued a separate order for each parent reflecting these rulings. We previously reversed and remanded both orders for lack of sufficient factual findings.
 
 Guardian ad Litem Program v. Fla. Dep’t of Children & Families,
 
 986 So.2d 661 (Fla. 1st DCA 2008);
 
 J.S. v. Fla. Dep’t of Children & Families,
 
 986 So.2d 662 (Fla. 1st DCA 2008). On remand, the trial court entered amended orders with the same dispositions as the previous orders, but with expanded factual findings.
 

 In the amended order terminating the mother’s rights, the trial court found that the Department had established grounds for termination of parental rights under paragraphs (c) and (e) of section 39.806(1) and that, under section 39.810, it was in the child’s manifest best interests to terminate the mother’s parental rights. In finding grounds for termination, the trial court noted that the circumstances that caused the creation of the case plan had not been significantly remedied. The trial court further found, under section 39.811(6)(d) and (e), that circumstances existed to justify terminating one parent’s rights without terminating the rights of the other. Specifically, the court found that “the protection of the child demands the termination of the parental rights of the mother” and that the mother’s rights to two of the child’s siblings had been previously involuntarily terminated. The trial court ruled that the mother would be permitted to maintain contact with the child, through correspondence and phone calls, as regulated by the child’s guardians.
 

 In the amended order denying the Department’s petition for termination of parental rights as to the father, the trial court found that no grounds had been established under section 39.806(1). As to ground (e) of section 39.806(1), the trial court found that the Department had not established the father’s failure to substan
 
 *1174
 
 tially comply with the case plan. The trial court explained that the father had “essentially completed all the tasks required of him by the case plan and the department” and that “[t]he danger and harm posed to the child result[] from the conditions in the father’s home created by the mother and the mother’s mental health condition.” After addressing some of the “manifest best interests” factors enumerated in section 39.810, the trial court concluded that termination of the father’s parental rights was not in the child’s manifest best interests and that permanent guardianship was. The trial court ruled that the father would be permitted to have contact with the child, including visitation, as regulated by the guardians.
 

 Review of Order Terminating the Mother’s Rights
 

 The mother raises two issues in the appeal from the order terminating her rights: (1) whether the trial court erred in terminating her rights based on grounds not alleged in the petition and (2) whether the trial court erred in finding grounds for a single-parent termination under section 39.811(6), Florida Statutes (2006). Our review of the order reveals findings that the Department established only two grounds for termination of the mother’s parental rights: paragraphs (c) and (e) of section 39.806(1). Both of these grounds were alleged in the petition. The trial court mentioned the additional grounds the mother contends were not properly found, but it did not find that those grounds were independent reasons to terminate her rights. Accordingly, we affirm as to the first issue without further discussion. We agree with the mother, however, that the trial court erred in finding grounds for a single-parent termination under section 39.811(6), which requires a trial court to consider additional factors when terminating one parent’s rights without terminating the rights of the other parent.
 

 Section 39.811(6), Florida Statutes (2006), provides that a court may terminate the parental rights of only one parent “only” under the following circumstances:
 

 (a) If the child has only one surviving parent;
 

 (b) If the identity of a prospective parent has been established as unknown after sworn testimony;
 

 (c) If the parent whose rights are being terminated became a parent through a single-parent adoption;
 

 (d) If the protection of the child demands termination of the rights of a single parent; or
 

 (e) If the parent whose rights are being terminated meets any of the criteria specified in s. 39.806(l)(d) and (f)-(i).
 

 See also In re L.C.,
 
 908 So.2d 568, 573 (Fla. 2d DCA 2005). Here, the trial court ruled that a single-parent termination was proper under paragraphs (d) and (e). Generally, the abuse of discretion standard is applicable to the “fact-based issues” in termination of parental rights cases.
 
 See N.S.H. v. Fla. Dep’t of Children & Family Servs.,
 
 843 So.2d 898, 902 n. 5 (Fla.2003). Additionally, findings are reversible if there is a lack of competent, substantial evidence to support them.
 
 N.L. v. Dep’t of Children & Family Servs.,
 
 843 So.2d 996, 999 (Fla. 1st DCA 2003). We will consider separately the propriety of both of the trial court’s findings under section 39.811(6), beginning with the finding made pursuant to paragraph (e).
 

 Section 39.811(6)(e) allows for the termination of only one parent’s rights “[i]f the parent whose rights are being terminated meets any of the criteria specified in s. 39.806(l)(d) and (f)-(i).” In finding that the mother’s rights to another child had previously been involuntarily terminated, the trial court found that the criteria specified in section 39.806(l)(i) were met. This
 
 *1175
 
 finding was error because neither the Department nor GAL submitted competent, substantial evidence of this fact at the termination of parental rights trial.
 

 Competent, substantial evidence has been defined as follows:
 

 Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.... We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the “substantial” evidence should also be “competent.”
 

 Perdue v. TJ Palm Assocs., Ltd.,
 
 755 So.2d 660, 665 (Fla. 4th DCA 1999) (quoting
 
 De Groot v. Sheffield, 95
 
 So.2d 912, 916 (Fla.1957)) (citations omitted). Here, there were several allusions to the fact that the mother’s rights to one other child had been terminated, but there was no definitive evidence that the prior termination of the mother’s rights was involuntary. Although one of the questions posed to the psychologist by the Department’s attorney suggested that the prior termination had been involuntary, an attorney’s questions do not constitute evidence,
 
 see Eight Hundred, Inc. v. Fla. Dep’t of Revenue,
 
 837 So.2d 574, 576 (Fla. 1st DCA 2003) (recognizing that “[r]epresentations by an attorney for one of the parties regarding the facts ... do not constitute evidence”). Because there is a lack of competent, substantial evidence in the record to support a single-parent termination under section 39.811(6)(e), the validity of this disposition depends on the propriety of the trial court’s finding that section 39.811(6)(d) applied.
 

 Section 39.811(6)(d) authorizes a trial court to terminate the rights of only one parent if the evidence shows that “the protection of the child demands termination of the rights of a single parent.” Section 39.811(6) does not allow for the termination of only one parent’s rights in every case where the Department establishes grounds for termination as to only one parent. In fact, section 39.811(6)(e) isolates certain grounds enumerated in section 39.806(1) as the grounds that are sufficient to support a single-parent termination. Sections 39.806(1)(c) and (e) are not listed in this provision.
 
 See
 
 § 39.811(6)(e). Therefore, the trial court’s findings that the Department established grounds to terminate the mother’s rights under section 39.806(l)(c) and (e) are insufficient, in themselves, to establish that the protection of the child demanded termination of the mother’s rights only.
 

 The trial court made only one finding to explain its determination that the protection of the child demanded the termination of the mother’s rights and not the father’s. Specifically, the court noted, “The evidence indicates that the dangers and safety concerns for the child result[ ] from the mother’s behavior and not the fathers [sic].” The trial court did not specifically detail the problematic behavior when explaining its decision in terms of section 39.811(6). However, the evidence supports a determination of two harms the mother may pose to the child. First, it shows that she hoards trash and is unable to maintain a hazard-free home. Second, it shows that she is not able to act as a caregiver to the child, in part because she does not understand a mother’s role in a parent-child relationship. As to the first issue, the evidence showed that the father lived in the hazardous home and was either unwill
 
 *1176
 
 ing or unable to remedy the problem as well. The trial court addressed this hazard as to the father by placing the child in permanent guardianship. It is unclear why the trial court viewed this solution as inadequate for the problems posed by the mother. The child’s placement in permanent guardianship is also relevant to a consideration of the mother’s lack of understanding of her role in the relationship. Because of the permanent guardianship, neither parent will be acting in a parental role.
 
 See
 
 § 39.01(54) (defining permanent guardianship as “a legal relationship that a court creates ... which is intended to be permanent and self-sustaining through the transfer of parental rights with respect to the child relating to protection, education, care and control of the person, custody of the person, and decisionmaking on behalf of the child”). Thus, it appears that the placement of the child in permanent guardianship removed any harm to the child that might otherwise “demand” the termination of the mother’s parental rights. Based on the evidence presented, the findings contained in the orders, and the ultimate disposition of the case, the trial court abused its discretion in effectuating a single-parent termination. Accordingly, we reverse as to this issue.
 

 Review of Order Denying the Department’s Petition for Termination of Parental Rights as to the Father
 

 In the appeal from the order declining to terminate the father’s rights, GAL and the Department agree on essentially two issues
 
 [3]
 
 , and GAL raises another issue separately. First, they argue that the trial court abused its discretion in declining to find grounds for termination of the father’s parental rights, and second, they argue that the trial court erred in failing to address specifically each of the “manifest best interests” factors enumerated in section 39.810, Florida Statutes. We agree with GAL and the Department as to these issues, and accordingly, we reverse and remand for further proceedings consistent with this opinion.
 

 First, we address the trial court’s finding that the Department failed to establish grounds for termination of parental rights under section 39.806(l)(e). Section 39.806 provides, in pertinent part, as follows:
 

 (1) Grounds for the termination of parental rights may be established under any of the following circumstances:
 

 [[Image here]]
 

 (e) When a child has been adjudicated dependent, a case plan has been filed with the court, and:
 

 1. The child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child’s placement into shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the parent and child.
 

 “Substantial compliance” is statutorily defined as “mean[ing] that the circumstances which caused the creation of the case plan have been significantly remedied to the
 
 *1177
 
 extent that the well-being and safety of the child will not be endangered upon the child’s remaining with or being returned to the child’s parent.” § 39.01(71), Fla. Stat. (2006). Under this definition, even if a parent has technically complied with the tasks required by the case plan, he or she will still not be in substantial compliance if the circumstances that caused the creation of the case plan have not been sufficiently remedied.
 
 See A.W. ex rel B.W. v. Dep’t of Children & Families,
 
 969 So.2d 496, 497 (Fla. 1st DCA 2007) (distinguishing between technical and substantial compliance);
 
 J.J. v. Dep’t of Children & Families,
 
 886 So.2d 1046, 1048-49 (Fla. 4th DCA 2004) (observing that “although the parents completed many of their tasks, such completion does not equate to substantial compliance”).
 

 Here, the trial court found that the father had not failed to substantially comply with the case plan, while acknowledging in a separate order that the conditions in the father’s home continued to be hazardous to the child. The court explained its decision by noting that “[t]he danger and harm posed to the child results from the conditions in the father’s home created by the mother and the mother’s mental health condition.” This explanation does not reflect a proper understanding of the statutory definition of “substantial compliance.” Even if the father did not cause the condition of the home, the trial court’s recognition that the home was still hazardous indicates that the father failed to take the necessary steps to remedy the problem, thus falling into non-compliance with the case plan. Additionally, the trial court found that the mother was not in substantial compliance with the case plan because of the condition of the home, even though it did not find that she had failed to complete the tasks required of her. In fact, although the trial court did not comment on the evidence regarding the mother’s completion of the tasks, the undisputed evidence indicates that she completed each of the tasks for which she received a referral from the Department. The trial court’s findings regarding the parents’ compliance with their case plans are irreconcilable. Because the trial court found that the home was still hazardous, and the undisputed evidence shows that the father continued to live in the home with the mother, the trial court abused its discretion in finding that the Department did not establish grounds for termination of parental rights under section 39.806(l)(e).
 

 Having determined that the trial court erred in declining to find grounds for termination of the father’s parental rights under section 39.806(l)(e), we now consider whether the trial court erred in conducting its best interests analysis. A trial court’s evaluation of the manifest best interests of a child in a termination of parental rights proceeding is governed by section 39.810, which provides as follows:
 

 In a hearing on a petition for termination of parental rights, the court shall consider the manifest best interests of the child.... For the purpose of determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors, including, but not limited to:
 

 (1) Any suitable permanent custody arrangement with a relative of the child. However, the availability of a nonadop-tive placement with a relative may not receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights. If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement,
 
 *1178
 
 including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.
 

 (2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.
 

 (3) The capacity of the parent or parents to care for the child to the extent that the child’s safety, well-being, and physical, mental, and emotional health will not be endangered upon the child’s return home.
 

 (4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child.
 

 (5) The love, affection, and other emotional ties existing between the child and the child’s parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties.
 

 (6) The likelihood of an older child remaining in long-term foster care upon termination of parental rights, due to emotional or behavioral problems or any special needs of the child.
 

 (7) The child’s ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties.
 

 (8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
 

 (9) The depth of the relationship existing between the child and the present custodian.
 

 (10) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
 

 (11) The recommendations for the child provided by the child’s guardian ad litem or legal representative.
 

 Section 39.810 does not expressly require a trial court to show its consideration of each of the statutory factors through written findings. However, Florida Rule of Juvenile Procedure 8.260(a) requires all orders issued in juvenile proceedings to contain specific findings of fact and conclusions of law.
 
 See also
 
 § 39.809(4), Fla. Stat. (2006) (requiring trial judges to enter “written order[s] with the findings and facts and conclusions of law” after hearings on petitions for termination of parental rights). Additionally, in any case where a trial court’s failure to make adequate factual findings interferes with an appellate court’s ability to determine whether an abuse of discretion has occurred, reversal is necessary.
 
 See State, Dep’t of Children & Families v. S.H.,
 
 734 So.2d 1080, 1082 (Fla. 1st DCA 1999).
 

 Here, the trial court’s findings under section 39.810 are insufficient to facilitate meaningful appellate review. Some of the factors are addressed only in part or only superficially. Still other factors are not mentioned at all. What is even more problematic is that many of the manifest best interests findings in the order terminating the mother’s rights are based on evidence that was equally applicable to both parents. Without at least some explanation of the trial court’s view of such evidence, we cannot say that the trial court did not abuse its discretion in finding that termi
 
 *1179
 
 nation of the father’s rights was not in the manifest best interests of the child.
 

 One of GAL’s specific arguments under this issue merits specific attention. GAL argues that the trial court erroneously-found a “strong bond” between the father and child, despite a lack of evidence of such a bond. This finding was relevant to factor (5) of section 39.810, which is “[t]he love, affection, and other emotional ties exiting between the child and the child’s parent or parents, siblings, and other relatives, and the degree of harm that would arise from the termination of parental rights and duties.” GAL has misinterpreted the trial court’s finding as to the bond between the father and the child. Regarding this bond, the trial court found, “No evidence before the court has indicated that there is not a strong bond between the father and the child. To the contrary[,] the evidence indicates that there is a bond between the child and the father.” The trial court’s statement that there was no evidence indicating a lack of a strong bond between the father and the child was erroneous. For example, the psychologist testified that the bond between the father and child was such that only one final in-person contact was necessary. This erroneous statement is not, however, the crux of the finding. The finding is simply that there is a bond between the child and father. The court did not qualify the strength of the bond. There is competent, substantial evidence in the record that the child and the father are bonded to some degree. For example, there was testimony that the father and child were affectionate with one another. Nevertheless, it is noteworthy that the trial court failed to address the “degree of harm that would arise from the termination of parental rights and duties.” This omission is especially significant in this case because there is no direct evidence that the child would be harmed by a termination of the father’s rights. In fact, there is an abundance of evidence suggesting that the child would not suffer from such a disposition.
 

 We do not intend to create a rule that in every termination of parental rights case, a trial court must include express written findings as to each of the section 39.810 factors. We also do not intend to abrogate the longstanding rule that a trial court is entitled to reject testimony, in all or in part. However, on this record, without more specific and complete findings, it appears that the trial court ignored evidence that was equally applicable to both parties and possibly overlooked specific evidence that the child would not be harmed by severing her bond with her father. Moreover, we do not find specific evidence that the child would be harmed by such a severance. Because it is the province of the fact-finder to synthesize the evidence, we decline to say, at this stage, that the trial court could take no view of the evidence that would suggest potential harm from the severance of the father’s parental rights and duties. However, it also appears, at this stage, that the trial court has not shown due consideration of the section 39.810 factors. Accordingly, we must reverse.
 

 Conclusion and Instructions
 

 We reverse the order terminating the mother’s parental rights only as to the trial court’s finding that, under the current disposition of the case, a single-parent termination is authorized under section 39.811(6). We reverse the order denying the petition to terminate the father’s parental rights as to the finding that the father substantially complied with his case plan and the determination that termination of the father’s rights was not in the best interests of the child. We remand both cases. On remand, the trial court may implement any disposition permitted
 
 *1180
 
 under section 39.811, provided that it supports the decision with specific and complete findings. For the reasons explained above, the evidence in this case will not permit the trial court to terminate the rights of only the mother if it decides to place the child in permanent guardianship.
 

 AFFIRMED in part; REVERSED in part; and REMANDED with instructions.
 

 WEBSTER and THOMAS, JJ., concur.
 

 [1]
 

 . We consolidate these appeals sua sponte for the purpose of this opinion only.
 

 [2]
 

 . The record indicates that the child had been previously adjudicated dependent and returned to the parents. The details regarding the prior dependency case are not pertinent to this appeal.
 

 [3]
 

 . GAL and the Department filed separate briefs. They each purport to raise only one issue, and the nuances of their arguments are different. Essentially, however, both GAL and the Department challenge the trial court’s findings under sections 39.806(1 )(e) and 39.810 for lack of specificity and inconsistency. We have reframed the issues to cover each of the arguments raised by GAL and the Department.