# Third District Court of Appeal

### State of Florida

Opinion filed August 3, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D17-2003 & 3D17-1942
Lower Tribunal No. 17-15083
_____

**Florida Department of Children and Families and the Guardian Ad Litem Program o/b/o P.R., child,**
Appellants,

vs.

**A.R. and R.L., parents,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Karla Perkins, and Sarah J. Rumph (Tallahassee), Department of Children and Families; Laura J. Lee (Sanford), Guardian ad Litem Program; Robert Latham, UM Children & Youth Law Clinic, and Robert Latham, for appellants.

Thomas Butler, P.A., and Thomas J. Butler; Kevin Coyle Colbert; Ilene F. Tuckfield, P.A., and Ilene F. Tuckfield, for appellees.

Before ROTHENBERG, C.J., and SALTER, and LINDSEY, JJ.

LINDSEY, J.

The Florida Department of Children and Family Services ("DCF") and the Guardian ad Litem Program (the "GAL") appeal a final judgment dismissing the petition for termination of parental rights of the mother, denying the petition for termination of parental rights of the father, and adjudicating the child dependent as to the father only. Because the trial court incorrectly applied the statutes defining sexual abuse, we reverse the adjudication of dependency as to the father and remand for entry of an order finding the father sexually abused the child and for further consideration of the best interests of the child and whether termination is the least restrictive means of protecting the child. Because there is competent substantial evidence to support the trial court's finding that there was no credible testimony that the mother failed to protect the child we affirm, without further elaboration, the dismissal as to the mother.

## I. PROCEDURAL AND FACTUAL BACKGROUND

In 2012, A.R. (the "father") and L.R. (the "mother") (collectively, "the "parents") adopted P.R. (the "child"), whose date of birth is 03/19/2003, from China when she was nine years old. At the time of adoption, she was in a placement and had previously been in an orphanage.

The triggering event for this case occurred during a regularly scheduled therapy session between the child and her therapist. The child's therapist had been chosen by the parents and had been seeing the child for almost a year prior to

address issues unrelated to this case, associated with school and peer relations. The child, who was at that time thirteen years old, purportedly spontaneously disclosed to her therapist that she and her father were "doing the S thing." When the therapist asked the child for clarification, the child allegedly spelled out the word "s-e-x." Upon questioning, the child purportedly explained that her father had been touching her breasts and genital area. According to her therapist, the child did not want for her to tell anyone because she loves her father very much, does not want him to get into trouble and "was getting used to it." The therapist further reported that the child was "crying hysterically" at the time of this alleged conversation. Based on this conversation, the therapist placed a call to the State of Florida abuse hotline and an investigation commenced. Thereafter, the child made similar disclosures to five other people.

## A. Proceedings Leading up to the Termination of Parental Rights Trial

DCF filed a petition to shelter the child based on allegations of sexual abuse by the father and failure to protect by the mother. On that same day, the trial court held a hearing, found probable cause and entered an order sheltering the child. Pursuant thereto, the trial court released the child to the temporary custody of the parents' friends (the "previous caregivers").[1] The trial court ordered therapeutic

---

[1] Thereafter, the trial court entered an order granting DCF's motion to modify custody. The trial court placed the child with a different non-relative individual (the "current caregiver"), finding that the child was not believed, nor emotionally supported by the previous caregivers who were inappropriately interfering with the

3

visitation with the mother and no contact with the father. A guardian from the GAL was appointed to represent the child's best interests (the "guardian").

DCF also filed a petition for termination of parental rights as to both parents. DCF alleged the parents "engaged in egregious conduct or had the opportunity and capability to prevent, and knowingly failed to prevent, egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the [c]hild." § 39.806(1)(f), Fla. Stat. (2017). The parents purportedly "subjected the [c]hild to sexual battery or sexual abuse as defined in Section 39.01, or chronic abuse." § 39.806(1)(g), Fla. Stat. (2017).

In addition to the allegations of egregious conduct, sexual battery or sexual abuse, and chronic abuse by the father, DCF contended the mother failed to protect the child after the child disclosed the abuse. DCF claimed the mother "not only knew of the molestation, she also facilitated ongoing contact between the perpetrator and victim [c]hild in an attempt to manipulate or pressure the [c]hild while investigation into the allegations was pending." In the petition, the GAL recommended the termination of parental rights as to both parents.

## B. The Termination of Parental Rights Trial

The termination of parental rights trial took place over eight days. A total of eighteen witnesses testified at trial, including the father, the mother and the child.

---

case.

In addition, among others, the following exhibits were admitted: (1) a transcript of the testimony given by the mother at the father's bond hearing; (2) a recording of the father's interview at the Doral Police Department held on January 11, 2017; (4) the child's forensic interview; (5) postings from the father's Facebook account depicting the child; and, (5) messages and video sent from the father to the mother which were located on the child's electronic devices.

## C. Proceedings Following the Termination of Parental Rights Trial

At the conclusion of the trial, the trial court entered an unelaborated order denying the petition for termination of parental rights as to both parents and adjudicating the child dependent as to the father. On that same date, the trial court entered two visitation orders. One order granted the mother unrestricted visitation with the child and the other order granted the father supervised weekly visitation. The trial court denied DCF's and the GAL's motion for stay pending review.

DCF, later joined by the GAL, filed an emergency petition for writ of certiorari regarding two visitation orders and an emergency motion for review of the denied stay. The GAL filed an amended motion for review of the two visitation orders. This Court granted the amended motion for review and entered a stay pending further order of this Court for all purposes, except the trial court's entry of findings of fact and conclusions of law relating to its summary denial of the petition for termination of parental rights.[2]

5

Subsequently, the trial court entered the final judgment on appeal here. The final judgment references only the testimony of the child, the parents, Ms. Pena, and Dr. Klein.

In the final judgment, the trial court made the following findings:

a. [A]ny touching around the chest or breast area of the Child was incidental, resulting from horseplay, wrestling and/or tickling between the Child and Father.

b. As for contact, touching or patting between Father and Child around the lower abdomen area of the Child, the Child first described it on a teddy bear named Emma, given to her by her Father, and then later described it on herself with her counsel present.

c. The Child and the Father were always clothed. No skin to skin contact occurred. The Child never reported such contact with the Father when the Child was alone with the Father on a cross country road trip spanning days.

d. Prior to Department involvement, the Mother and Father provided food, shelter, care, tutoring, therapy and martial arts training for the Child.

e. After hearing and seeing the described contact by the Child on two different occasions, and considering all the

---

[2] The emergency petition for writ of certiorari and the amended motion for review were filed in case no.: 3D17-1942. The appeal of the final judgment was filed in case no.: 3D17-2003. This Court consolidated the cases for all appellate purposes. In addition, DCF filed an emergency petition for writ of certiorari and emergency review for stay, requesting this Court to quash a portion of an omnibus order entered by the trial court. Three days later, DCF filed a notice of voluntary dismissal of its emergency petition because the trial court had amended and removed the challenged portions of the omnibus order. The following day, this Court entered an order recognizing the voluntary dismissal and dismissing the emergency petition.

other evidence presented, including family photos and videos that a therapist concludes is evidence of grooming the Child by the Father for sexual purposes, which the Court does not deem credible, the Court cannot conclude by clear and convincing evidence that said contact is egregious, sexual battery, sexual abuse or chronic abuse.

In addition, the trial court found that: "Both parents testified that the Father and Child regularly engage in horseplay, wrestling and tickling, which the Mother would discourage by telling the Father and Child to 'stop roughhousing', or words to that effect." Further, the trial court found that "[t]he Mother's testimony, which is corroborated by the Child's therapist, Ms. Pena, a licensed clinical social worker, among others, establishes that the Mother was completely surprised by and unaware of the allegations set forth in the Petition." The trial court concluded:

> At most, and consistent with Dr. Klein's testimony, a licensed psychologist, *the evidence and testimony demonstrate, by the preponderance of the evidence, that there was uncomfortable and/or inappropriate contact, touching or patting between the Father and Child, but not in a sexual way.* Moreover, no credible testimony was presented indicating that the Father touched the child *in or on her vagina or under her clothes*, or engaged in egregious conduct toward the child as defined in section 39.806(f) and/or (g). Likewise, there was no credible testimony indicating that the Mother was aware of and/or failed to protect the Child from any conduct alleged in the Petition.

(Emphasis added). In so doing, the trial court held that "[t]he grounds for termination of parental rights set forth in the Petition have not been established by clear and convincing evidence as to both parents" and granted the mother's motion

7

for judgment of dismissal and denied DCF and the GAL's petition to terminate the parental rights of the father.

The trial court, however, further held that "[g]rounds for dependency [] have been established by a preponderance of the evidence as to the Father only." As such, the trial court found that "[t]he Child is dependent within the meaning and intent of Chapter 39, including sections 39.01(2), 39.01(15)(a), and/or 39.01(15)(f), such that the Child and Father are in need of services to address their interactions, communications and any resulting trauma, which left untreated would place the Child at risk of harm."

Lastly, the trial court determined that "[i]t is in the best interest of the Child, and the Child's expressed intent, to be returned to her home to reside with her Mother upon the Court's imposed condition that Father not reside in nor visit said home when the Child is present until further Order of the Court."[3]

## II.    JURISDICTION

---

[3] During the pendency of this appeal, this Court granted DCF's and the GAL's motions to relinquish jurisdiction. Jurisdiction was relinquished to the trial court to hold an evidentiary hearing on newly discovered evidence, to hold a hearing on the child's attorney's motion to withdraw as counsel for the child, and to address the visitation issues with the mother. This Court ordered that the stay shall remain in effect as to contact with the father. Upon relinquishment, the successor trial court entered an order on the hearing regarding newly discovered evidence wherein it concluded that DCF and the GAL failed to meet their burden of establishing, by a preponderance of the evidence, that the new evidence would likely change the result in the event of a new trial. This Court thereafter granted the parents' motion to relinquish jurisdiction to the trial court for an evidentiary hearing on the child's placement and needs.

This is an appeal of a final order subject to review pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A).

## III.   STANDARD OF REVIEW

"Appellate review of a termination of parental rights case is 'highly deferential.' That is, a 'finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support.'" C.G. v. Dep't of Children & Families, 67 So. 3d 1141, 1143 (Fla. 3d DCA 2011) (internal citations omitted) (quoting D.P. v. Dep't of Children & Family Servs., 930 So. 2d 798, 801 (Fla. 3d DCA 2006)). "With this in mind, the standard of review is whether the trial court's judgment is supported by substantial and competent evidence." Id. (citation omitted).

We recognize it is not the role of an appellate court to substitute its judgment for that of a trial court. G.C. v. Dep't of Children & Families, 791 So. 2d 17, 21 (Fla. 5th DCA 2001). "Rather, it is [the appellate court's] responsibility to search the record for 'competent, substantial evidence' which supports the trial court's findings and conclusions. Nowhere is this responsibility greater than in a dependency case, where the testimony is so often confusing and conflicting." Id. (quotation marks in original). However, we review issues involving the interpretation of statutes *de novo*. See B.Y. v. Dep't of Children & Families, 887

9

So. 2d 1253, 1255 (Fla. 2004); Dep't of Children & Family Servs. v. P.S., 932 So. 2d 1195, 1198 (Fla. 1st DCA 2006) ("We have *de novo* review of issues involving the interpretation of statutes.").

## IV. ANALYSIS

In order to terminate parental rights, the Department must prove: (1) at least one of the statutory grounds for termination; (2) termination is in the child's manifest best interest; and (3) termination is the least restrictive means of protecting the child from harm. See C.T. v. Dep't of Children & Families, 22 So. 3d 852, 854 (Fla. 3d DCA 2009) (citations omitted). "To justify termination of parental rights, [DCF] bears the burden of proof to present clear and convincing evidence that a parent has abused, neglected or abandoned a child, or that the child is at substantial risk of future abuse, neglect, or abandonment." T.V. v. Dep't of Children & Family Servs., 905 So. 2d 945, 946 (Fla. 3d DCA 2005). Here, the only statutory ground DCF plead in its petition for termination of parental rights was sexual abuse. Thus, we limit our review solely to whether the trial court's findings are supported by competent substantial evidence and whether the trial court correctly applied the law to those findings.

### A. Sexual Abuse under Chapter 39 of the Florida Statutes

Chapter 39 of the Florida Statutes entitled, "Proceedings Relating to Children," provides the statutory framework for our review. Under Chapter 39,

10

DCF establishes a basis for the termination of parental rights when it proves that:

> (f) The parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling. . . .
>
> . . . .
>
>> 2. As used in this subsection, the term "egregious conduct" means abuse, abandonment, neglect, or any conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious conduct may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child.
>
>> (g) The parent or parents have subjected the child or another child to aggravated child abuse as defined in s. 827.03, sexual battery or sexual abuse as defined in s. 39.01, or chronic abuse.

§ 39.806(1)(f)-(g), Fla. Stat. (2017).  In Florida, the definition of "sexual abuse" for purposes of establishing a basis for termination of parental rights is drawn from the definitions found in section 39.01.  More specifically, the definition of "abuse" found therein encompasses "sexual abuse."  § 39.01(2), Fla. Stat. (2017) ("'Abuse' means any willful act or threatened act that results in any physical, mental, or sexual abuse, injury, or harm that causes or it is likely to cause the child's physical, mental, or emotional health to be significantly impaired.").

Similarly, under section 39.01(71), "'[s]exual abuse of a child' for purposes

of finding a child to be dependent" includes "[t]he intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of either the child or the perpetrator . . . ." § 39.01(71)(d), Fla. Stat. (2017). Further, this Court, and others, have held that "[a] parent's sexual abuse of a child is 'egregious conduct.'" I.D. v. Dep't of Children & Families., 13 So. 3d 1117, 1120 (Fla. 3d DCA 2009) (first citing N.R.R. v. Dep't of Children & Families, 959 So. 2d 359, 359-60 (Fla. 3d DCA 2007) (finding there was substantial competent evidence supporting termination of parental rights based on the parent's "egregious abuse" – specifically, sexual abuse of the child's half-sibling – and incarceration for a substantial portion of the child's majority); and then citing Dep't of Children & Families. v. B.B., 824 So. 2d 1000, 1007 (Fla. 5th DCA 2002) (finding sexual abuse of siblings sufficient to terminate father's parental rights to other children for "egregious conduct")).

Finally, "sexual abuse does not require penetration and can occur without any physical manifestations." Id.; see also G.C., 791 So. 2d at 19-20 (holding that there was competent, substantial evidence supporting the trial court's finding that the father sexually abused the child by touching her over her clothing in her vagina area, notwithstanding that there was no physical evidence of sexual abuse); A.B. v. Fla. Dep't of Children & Family Servs., 901 So. 324, 325-26 (Fla. 3d DCA 2005) (affirming the trial court's adjudication of dependency as to the mother for failing

12

to protect the child from her stepfather's physical and sexual abuse although there was no penetration alleged).

**B. Application of the Statutory Definition of Sexual Abuse to the Facts**

While great deference is given to a trial court's findings in a termination of parental rights case, no deference is owed if the findings were induced by an erroneous view of the law. See, e.g. Holland v. Gross, 89 So. 2d 255, 258 (Fla. 1956) (holding that decision is clearly erroneous where a trial court has misapplied the law to the established facts); In re Estate of Donner, 364 So. 2d 742, 748 (Fla. 3d DCA 1978) ("We are not however bound by the trial court's legal conclusions where those conclusions conflict with established law." (citing Holland, 89 So. 2d 255)); Fito v. Attorneys' Title Ins. Fund, Inc., 83 So. 3d 755, 757-58 (Fla. 3d DCA 2011) (citation omitted) (applying a *de novo* standard to the trial court's conclusions of law and application of law to the facts); Oceanic Int'l Corp. v. Lantana Boatyard, 402 So. 2d 507, 511 (Fla. 4th DCA 1981) (An appellate court is not "bound by the trial court's legal conclusions where those conclusions conflict with established law." (citing Holland, 89 So. 2d 255)).

Here, the trial court found that any touching around the child's breast area was incidental, resulting from horseplay, wrestling or tickling between the child and the father. Further, as for the contact, touching or patting between the father and the child around the child's lower abdomen area, the trial court found that they

13

"were always clothed" and "[n]o skin to skin contact occurred." Moreover, the trial court found "no credible testimony was presented indicating that the [f]ather touched the child in or on her vagina or under her clothes, or engaged in egregious conduct." These findings demonstrate the trial court's misapplication of the law. The definition of sexual abuse expressly includes the touching of clothing covering the child's genitals, genital area, or groin. See § 39.01(71)(d). Testimony about whether the touching was over or under the child's clothing was therefore irrelevant.

The trial court's misapplication of the law is further demonstrated by its finding that "[a]t most . . . there was uncomfortable and/or inappropriate contact, touching or patting between the Father and Child, but not in a sexual way." Whether the touching was done "in a sexual way" was, likewise, irrelevant, as neither section 39.806(1)(g) nor section 39.01(71) require such proof. Rather, the intentional touching of a child's genitals, genital area, or groin constitutes sexual abuse. Whether the person doing the touching intended the touching to be sexual, playful, mean-spirited, or otherwise, is not contemplated by the statute.

The trial court's questions to the child about whether she meant there was touching of her "butt" when she said "vagina" were similarly irrelevant and, again, demonstrate the trial court's misapplication of the law, as the definition of sexual abuse includes touching of the buttocks. See § 39.01(71)(d). Further, the trial

14

court's questions posed to the child about where exactly on the vagina the touching occurred, including whether it was at the opening of the vagina and where her pubic hair was, were irrelevant given the statutory definition of sexual abuse. The touching of the child's pubic hair, above the actual opening of the vagina, falls within the definition of sexual abuse that includes touching the genitals, genital area, or groin. See § 39.01(71)(d). The trial court's additional questioning of the child to ascertain where her pubic hair started and whether her underwear extended past her belly button was similarly irrelevant.

The child consistently testified that the father touched her vagina above the pubic hair and over her underwear. However, the trial court failed to recognize that pubic hair is undoubtedly located in the genital area and the touching of pubic hair necessarily constitutes touching the genital area. Instead, the trial court appears to have construed the child's pubic hair on top of her vagina not to be part of her vagina, based on its repeated questioning of the child as to whether her pubic hair was by her vaginal opening.

"Neither physical evidence nor expert testimony is required to establish sexual abuse or egregious conduct by clear and convincing evidence." I.D., 13 So. 3d at 1120 (affirming the trial court's termination of parental rights on the basis of egregious conduct under subsection (1)(f), and sexual abuse under subsection (1)(g) based primarily on evidence introduced through the child, who understood

15

the difference between the truth and a lie and whose credible testimony was unrebutted and consistent).  Moreover, as previously stated above, "sexual abuse does not require penetration and can occur without any physical manifestations." Id.

Further, despite the testimony of six witnesses that the child reported that the father had been touching her breasts and genital area, the trial court relied only on the testimony of Dr. Sandra Klein in finding that "[a]t most . . . the evidence and testimony demonstrate, by the preponderance of the evidence, that there was uncomfortable and/or inappropriate contact, touching or patting between the Father and Child, but not in a sexual way."  However, even Dr. Klein's testimony does not support this finding.  Rather, Dr. Klein testified that her role was to assess only the child's ability to testify and any potential resulting harm.  Dr. Klein testified that she did not discuss the specifics of the allegations with the child and did not pay attention to whether the allegations were true or verified.  And, in that regard, Dr. Klein evaluated the child for only one hour on only one occasion.

Thus, the trial court erred in finding that it "cannot conclude by clear and convincing evidence that said contact is egregious, sexual battery, sexual abuse or chronic abuse" because the testimony of the witness on which the trial court relied does not support this finding.  See Dep't of Children & Families v. C.F., 788 So. 2d 988, 988 (Fla. 3d DCA 1998) (reversing the denial of a termination petition

16

where "the evidence was overwhelmingly in favor of termination[] and the trial court's contrary decision was an abuse of discretion.").

**C. The Trial Court's Findings are Irreconcilable**

Finally, the trial court's finding that DCF failed to prove sexual abuse under sections 39.806(1)(f)-(g) is irreconcilable with its finding of dependency under Chapter 39, including sections 39.01(2), 39.01(15)(a), and 39.01(15)(f). The definition of "'[s]exual abuse of a child' for purposes of finding a child to be dependent" includes:

> (d) The intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of either the child or the perpetrator, except that this does not include:
>
> > 1. Any act which may reasonably be construed to be a normal caregiver responsibility, any interaction with, or affection for a child; or
> >
> > 2. Any act intended for a valid medical purpose.

§ 39.01(71)(d). Further, section 39.01(15) states that a "'[c]hild who is found to be dependent' means a child who, pursuant to this chapter, is found by the court: (a) [t]o have been abandoned, abused, or neglected by the child's parent or parents or legal custodians; . . . [or] (f) [t]o be a substantial risk of imminent abuse, abandonment, or neglect by the parent or legal custodians; . . . ." § 39.01(15)(a), (f), Fla. Stat. (2017).

17

Here, the trial court found the child was dependent as to the father under section 39.01 "such that the [c]hild and [the] [f]ather are in need of services to address their interactions, communications and any resulting trauma, which left untreated would place the [c]hild at risk of harm." As such, the trial court ordered the child be returned to the mother on the condition that the father not reside in or visit the home when the child is present. Yet, as to the termination of parental rights, the trial court found that any touching by the father around the child's breast area was incidental and that no credible testimony indicated that the father touched the child on her vagina or engaged in egregious conduct. Rather, the trial court determined that at most, there was uncomfortable or inappropriate contact, touching or patting between the father and child, but not in a sexual way. However, for any contact, touching, or patting to have been uncomfortable or inappropriate under these circumstances, such contact, touching or patting necessarily had to have been because of its sexual nature. Touching, patting or coming into contact with a child's genital area in a way that is undisputedly uncomfortable and/or inappropriate is sexual abuse irrespective of whether the person doing the touching intended it to be in a sexual way.

Accordingly, the trial court's finding that there was no egregious conduct under section 39.806(1)(f) or sexual abuse under section 39.806(1)(g), but that there was abuse under section 39.01, is irreconcilable. See J.S. v. Florida Dep't of

18

Children & Families, 18 So. 3d 1170, 1177 (Fla. 1st DCA 2009) (reversing the trial court's denial of a petition for termination of parental rights where the court's findings that the father was in substantial compliance with the case plan, but the mother was not, based on the hazardous conditions of the home they lived in together, were irreconcilable).

**D. The Manifest Best Interests of the Child**

Reversal of the denial of a termination petition is warranted when the denial is not in the child's best interest. See C.F., 788 So. 2d at 988; Fla. Dep't of Children & Family Servs. v. A.Q., 937 So. 2d 1156, 1158 (Fla. 3d DCA 2006). Section 39.810, Florida Statutes (2017), sets out eleven factors for the trial court to consider in determining whether termination of parental rights is in the manifest best interest of the child. Specifically,

> [f]or the purpose of determining the manifest best interests of the child, the court *shall consider and evaluate all relevant factors, including, but not limited to*:
>
> (1) Any suitable permanent custody arrangement with a relative of the child. However, the availability of a nonadoptive placement with a relative may not receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights. If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement, including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.

19

(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.

(3) The capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home.

(4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child.

(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties.

(6) The likelihood of an older child remaining in long-term foster care upon termination of parental rights, due to emotional or behavioral problems or any special needs of the child.

(7) The child's ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties.

(8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

(9) The depth of the relationship existing between the child and the present custodian.

(10) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

(11) The recommendations for the child provided by the child's guardian ad litem or legal representative.

§ 39.810(1)-(11) (emphasis added). In finding that it is in the best interest of the child and that the child's expressed intent was to be returned to her home to reside with the mother, the trial court overlooked that the child wished to live with the mother "later." This was, according to the child's testimony, because the parents were living together and the child conditioned her desire to return home upon the father being honest about the touching and receiving therapy to control himself and stop touching her. See § 39.810(10). However, "the reasonable preferences and wishes of the child" are not dispositive. See Dep't of Children & Family Servs. v. M.J., 889 So. 2d 986, 988 (Fla. 4th DCA 2004) (reversing the denial of termination despite the children's testimony that they loved the parents and were against termination, where the trial court found that the father's sexual deviancy placed them at extreme risk and the mother refused to protect them from him).

While the record clearly supports the trial court's finding that the parents can provide for the child's material needs, including food, shelter, tutoring, therapy and martial arts training, the language of the statute is mandatory. Section 39.810 states that "the court *shall* consider and evaluate all relevant factors, including, but

21

not limited to" the enumerated eleven factors. § 39.810 (emphasis added). Yet, the trial court did not. As this Court explained in K.R.L. v. Dep't of Children & Family Services:

> Full and accurate fact finding is essential not only on the question whether DCF has authority to terminate parental rights but also on the question whether it is in the child's best interests to do so. *See* § 39.809(5), Fla. Stat. (2009); *In re L.H.*, 647 So. 2d 311, 311-12 (Fla. 5th DCA 1994); *see also In re K.M.*, 788 So. 2d 306, 306 (Fla. 2d DCA 2001) (noting that when at least one of the grounds for termination of parental rights has been established, the "issue then is whether the DCF proved by clear and convincing evidence the additional requirement that termination is in the manifest best interests of the children"); *L.J.R. v. T.T.*, 739 So. 2d 1283, 1287 (Fla. 1st DCA 1999) (stating that in termination of parental rights proceedings, even when statutory requirements are proven, a trial court still must determine whether termination of parental rights is in the child's manifest best interests).

83 So. 3d 936, 939 (Fla. 3d DCA 2012). Here, the trial court neither considered all of the eleven statutory factors required for a determination of the manifest best interests of the child nor made factual findings with respect thereto.

**E. The Least Restrictive Means Test**

Although parental rights are fundamental, they are not absolute, as they are subject to the overriding principle that the best interests of the children must prevail. See Padgett v. Dep't of Health & Rehab. Servs., 577 So. 2d 565, 570-71 (Fla. 1991). As stated by the Florida Supreme Court:

22

> While the parent's interest in maintaining parental ties is essential, the child's entitlement to an environment free of physical and emotional violence at the hands of his or her most trusted caretaker is more so. The state has a compelling interest in protecting all its citizens – especially its youth – against the clear threat of abuse, neglect and death.

Id. at 570. Furthermore,

> to protect the rights of the parents and children, the state bears the burden of showing "by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." The state must also establish that the termination of parental rights "is the least restrictive means of protecting the child from serious harm."

T.P. v. Dep't of Children & Family Servs., 935 So. 2d 621, 624 (Fla. 3d DCA 2006) (quoting Padgett, 577 So. 2d at 571). Thus, the "least restrictive means" test "requires that measures short of termination should be utilized if such measures can permit the safe re-establishment of the parent-child bond." Dep't of Children & Families v. B.B., 824 So. 2d 1000, 1009 (Fla. 5th DCA 2002); see also D.M. v. Dep't of Children & Families, 79 So. 3d 136, 139-40 (Fla. 3d DCA 2012) ("DCF must proceed in a narrowly tailored manner and must prove that, in addition to the statutory requirements for termination of parental rights, termination is the least restrictive means of protecting the child from serious harm.") (quoting N.S & D.R. v. Dep't of Children & Families, 36 So. 3d 776, 778 (Fla. 3d DCA 2010)).

However, termination of parental rights without a case plan with a goal of

23

reunification is permitted when based on sections 39.806(1)(f)-(g). See §

39.802(5), Fla. Stat. (2017) ("When a petition for termination of parental rights is

filed under s. 39.806(1), . . . the department need not offer the parents a case plan

with a goal of reunification, but may instead file with the court a case plan with a

goal of termination of parental rights . . . ."); § 39.806(2), Fla. Stat. (2017)

("Reasonable efforts to preserve and reunify families are not required if a court of

competent jurisdiction has determined that any of the events described in . . .

paragraphs (1)(f)-(m) have occurred."); § 39.806(3), Fla. Stat. (2017) ("If a petition

for termination of parental rights is filed under subsection (1), . . . . the department

need not offer the parents a case plan having a goal of reunification, but may

instead file with the court a case plan having a goal of termination of parental

rights . . . .").

Here, because the trial court found that there was no egregious conduct

under section 39.806(1)(f) or sexual abuse under section 39.806(1)(g), it

necessarily made no factual findings as to whether termination of parental rights is

the least restrictive means of protecting the child from serious harm.

V.    **CONCLUSION**

Because the trial court incorrectly applied the statutes defining sexual abuse

and because the trial court's finding that DCF failed to prove sexual abuse under

sections 39.806(1)(f)-(g) is irreconcilable with its finding of dependency within the

meaning of Chapter 39, including sections 39.01(2), 39.01(15)(a) and 39.01(15)(f), we reverse the adjudication of dependency as to the father and remand for entry of an order finding that the father sexually abused the child. Further, we remand for an evidentiary hearing and for entry of an order, within thirty days, addressing the manifest best interests of the child and including factual findings in accordance with the eleven factors set forth section 39.810 as well as whether the termination of parental rights as to the father is the least restrictive means of protecting the child from serious harm.

Because there is competent substantial evidence to support the trial court's finding that there was no credible testimony that the mother failed to protect the child we affirm, without further elaboration, the dismissal as to the mother.

Affirmed in part; reversed in part; and remanded.

This decision shall take effect immediately, notwithstanding the filing of any post-opinion motions.